# THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| ANGELA B., <br><br> **Plaintiff,** <br><br> v. <br><br> FRANK BISIGNANO,[1] <br> **Commissioner of Social Security,** <br><br> **Defendant.** | **MEMORANDUM DECISION AND ORDER** <br><br><br> Case No. 1:25-cv-00023-JCB <br><br><br> Magistrate Judge Jared C. Bennett |

## Procedural Background[2]

Plaintiff Angela B. ("Plaintiff") alleges disability due to various physical and mental impairments. Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act[3] in August 2021[4] and Supplemental Security Income under Title XVI of the Social Security Act[5] in August 2022.[6] Plaintiff's claims were denied initially[7] and upon

---

[1] Frank Bisignano is now the Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), he has been substituted as the Defendant in this case. ECF No. 10.

[2] Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have consented to Judge Jared C. Bennett conducting all proceedings in this case, including entry of final judgment. ECF No. 6.

[3] 42 U.S.C. §§ 401-434.

[4] ECF No. 9, Administrative Record ("AR ___") 255-61.

[5] 42 U.S.C. §§ 1381-1383f.

[6] AR 240-52.

[7] AR 116-25.

reconsideration.[8] On November 9, 2023, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ").[9] The ALJ issued a written decision on January 11, 2024, denying Plaintiff's claims.[10] Plaintiff appealed the adverse ruling, and, on January 3, 2025, the Appeals Council denied her appeal,[11] making the ALJ's decision final for purposes of judicial review.[12] Plaintiff then filed suit in this court seeking review of Commissioner of Social Security Frank Bisignano's ("Commissioner") final decision.[13]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[14] The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."[15] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[16] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[17] "The failure to apply the correct

---

[8] AR 129-44.

[9] AR 55-81.

[10] AR 28-54.

[11] AR 1-6.

[12] 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

[13] ECF No. 1.

[14] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation modified).

[15] 42 U.S.C. § 405(g).

[16] *Lax*, 489 F.3d at 1084 (citation modified).

[17] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (citation modified).

legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[18]

The aforementioned standards apply to the Commissioner's five-step evaluation process for determining whether a claimant is disabled.[19] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[20]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [she] is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.[21]

At step three, the claimant must show that his or her impairments meet or equal one of several listed impairments that are "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."[22] "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ."[23] Before considering step four,

---

[18] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation modified).

[19] 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[20] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Williams*, 844 F.2d at 750.

[21] *Williams*, 844 F.2d at 750-51 (citation modified); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii).

[22] 20 C.F.R. §§ 404.1525(a), 416.925(a); *see also id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[23] *Williams*, 844 F.2d at 751.

however, the ALJ must determine the claimant's residual functional capacity ("RFC").[24] An individual's RFC is her greatest ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments.[25] In making this determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe.[26]

For the fourth step, the claimant must show, given her RFC, that her impairments prevent performance of her "past relevant work."[27] "If the claimant is able to perform [her] previous work, [she] is not disabled."[28] If, however, the claimant is not able to perform her previous work, she "has met [her] burden of proof, establishing a prima facie case of disability."[29]

From here, "[t]he evaluation process . . . proceeds to the fifth and final step," where the burden of proof shifts to the Commissioner.[30] The decision maker must determine "whether the claimant has the [RFC] to perform other work in the national economy in view of [her] age, education, and work experience."[31] If it is determined that the claimant "can make an adjustment to other work," she is not disabled.[32] If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," she is disabled and entitled to benefits.[33]

---

[24] 20 C.F.R. §§ 404.1520(a)(4), (e), 416.920(a)(4), (e).
[25] *Id.* §§ 404.1545(a)(1), (b)-(c), 416.945(a)(1), (b)-(c).
[26] *Id.* §§ 404.1545(a)(2), (e), 416.945(a)(2), (e).
[27] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
[28] *Williams*, 844 F.2d at 751.
[29] *Id.*
[30] *Id.*
[31] *Id.* (citation modified); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).
[32] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).
[33] *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ANALYSIS

**I.   The ALJ Adequately Addressed the Supportability and Consistency of the Relevant Medical Opinions.**

Contrary to Plaintiff's arguments, the RFC is not flawed due to the ALJ's purported failure to adequately address the supportability and consistency of the opinions of Dustin G. Child, M.D. ("Dr. Child") and Nicole Leonard, M.D. ("Dr. Leonard"). Where, as here, Plaintiff filed her claims after March 27, 2017, the requirements of 20 C.F.R. §§ 404.1520c and 416.920c apply to the ALJ's decision. Paragraph (a) of those sections provides:

> When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.[34]

Paragraph (b) of 20 C.F.R. §§ 404.1520c and 416.920c require the ALJ to "articulate . . . how persuasive" the ALJ finds "all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record."[35] And, like paragraph (a), paragraph (b)(2) provides that "[t]he factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be."[36] In terms of supportability, paragraph (c)(1)

---

[34] 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

[35] Id. §§ 404.1520c(b), 416.920c(b).

[36] Id. §§ 404.1520c(b)(2), 416.920c(b)(2).

5

provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."[37] Additionally, paragraph (c)(2) states that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."[38] As shown in order below, the ALJ complied with these requirements regarding the opinions from Dr. Child and Dr. Leonard.

    A.  <u>The ALJ Properly Evaluated Dr. Child's Opinions</u>.

The ALJ soundly considered Dr. Child's opinions. In the ALJ's eight-paragraph analysis of Dr. Child's opinions, the ALJ clearly explained why Dr. Child's two opinions from October 2021 and July 2023 were not persuasive.[39] Beyond the check-box form of Dr. Child's opinions, the ALJ found Dr. Child's opinions to be unsupported by the treatment regimen he employed for Plaintiff.[40] In other words, if Plaintiff's condition were as bad as Dr. Child opined in his two evaluations, his conservative treatment of Plaintiff over time does not support his findings in his two opinions made specifically for Social Security litigation. The ALJ's supportability evaluation of Dr. Child's opinions complied with the Commissioner's regulations.

---

[37] *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1).

[38] *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

[39] AR 46-47.

[40] *Id*.

The ALJ then addressed the consistency requirement by finding that Dr. Child's opinions relied heavily on Plaintiff's subjective report of symptoms instead of objective medical evidence.[41] Indeed, a comparison of Dr. Child's opinion and Plaintiff's complaints, in the ALJ's words, "almost mirror" one another.[42] Additionally, the ALJ correctly observed that Dr. Child's opinions were inconsistent with those of the state medical consultants, who, after reviewing the medical evidence, opined that Plaintiff could handle light work.[43] Given Dr. Child's conservative treatment of Plaintiff over time versus the significant limitations he found specifically for Plaintiff's Social Security case, which closely follow Plaintiff's complaints, coupled with contrary opinions in the record allowed the ALJ to find that Dr. Child's observations were as inconsistent as they were unsupportable. This is all the Commissioner's regulations required.

Nevertheless, Plaintiff contends that the ALJ's explanation was legally deficient because the ALJ did not explain why the state medical consultants' opinions were better than Dr. Child's.[44] Although true that the ALJ neither provided a head-to-head comparison of the opinions of the state medical consultants and Dr. Child nor specifically discussed why one doctor's opinion was more persuasive than the other, the ALJ clearly stated why he found the opinions of the state medical consultants persuasive.[45] The ALJ observed that those medical consultants reviewed the medical records and made recommendations that were supported by and internally

---

[41] AR 47.

[42] *Id*. (citing AR 589-95, 603).

[43] AR 45, 47.

[44] ECF No. 13 at 22; ECF No. 18 at 4.

[45] AR 45, 47.

consistent with the "objective medical evidence," including imaging of the lumbar spine.[46] Thus, the ALJ more than adequately explained why he found persuasive the state medical consultants' opinions and why Dr. Child's opinions were not persuasive.

More fundamentally, however, Plaintiff's argument that the ALJ should have engaged in a head-to-head comparison of doctors is legally flawed. Plaintiff cites to no legal authority from any source requiring an ALJ to engage in such a comparison, and the court cannot find such authority. Moreover, Plaintiff fails to understand that this court's review "must be based on the record taken as a whole."[47] In other words, the center of the court's analysis is whether the ALJ's finding that Plaintiff is not disabled is supported by substantial evidence considering the entire record. The focal point of judicial review is not Dr. Child's opinions. Put another way, there is no legal requirement for the ALJ to explain how he specifically compared and contrasted Dr. Child's medical opinions against all challengers and why the challengers' views triumphed over Dr. Child's. That is not how appellate review works. The fact is the ALJ more than adequately discussed the supportability and consistency of both Dr. Child's opinions and those of the state medical consultants and believed that the state medical consultants were entitled to greater weight in rendering an RFC determination. The ALJ's weighing of contradictory expert opinion is something this court will not redo. Therefore, the ALJ's discussion of Dr. Child's opinions complied with relevant law.

---

[46] AR 45.

[47] *Wall v. Astrue,* 561 F.3d 1048, 1052 (10th Cir. 2009) (citation modified).

B. <u>The ALJ Also Properly Evaluated Dr. Leonard's Opinions</u>.

Plaintiff's arguments regarding Dr. Leonard fare no better than her arguments regarding Dr. Child. The ALJ's three-paragraph discussion of Dr. Leonard's opinions also met the regulatory requirements for consistency and supportability.[48] The ALJ observed that Dr. Leonard's finding that Plaintiff "would not be prevented from lifting and carrying light objects . . . is not inconsistent with a restriction to light exertion."[49] The ALJ found this opinion from Dr. Leonard to be consistent with Dr. Leonard's findings from her objective examination of Plaintiff, supported by other medical evidence in the record, and consistent with the RFC.[50] However, the ALJ rejected Dr. Leonard's "postural and stand/walk limitations" because the ALJ found the state medical consultants' opinions to be more persuasive,[51] which the court discussed above. The ALJ had conflicting medical opinions, considered them both, and found one more persuasive than the other. The court will not reweigh the evidence or require the ALJ to place medical providers favorable to Plaintiff's position as the center of attention against which all other medical opinion must be measured. All the regulations require is a discussion of how persuasive an opinion is through the lens of supportability and consistency. The ALJ complied with those requirements. Thus, Plaintiffs' challenge to how the ALJ weighed Dr. Leonard's opinions fails.

---

[48] AR 46.

[49] *Id.*

[50] *Id.*

[51] *Id.*

9

## II. The ALJ Did Not Err in Refusing to Place Mental Limitations in the RFC.

The ALJ's RFC assessment is supported by substantial evidence even though it lacks mental limitations. "A claimant must make only a *de minimis* showing to advance beyond step two [in the five-step inquiry]. To that end, a claimant need only establish, and an ALJ need only find, one severe impairment."[52] Indeed, the applicable regulations "require[] a claimant to show only "*a* severe" impairment—that is, *one* severe impairment—to avoid a denial of benefits at step two."[53] And "[a]s long as the ALJ finds one severe impairment, the ALJ . . . must proceed to the next step. Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ find that at least one other impairment is severe."[54]

The ALJ did not find that Plaintiff's mental health impairments were "severe" at step two.[55] But the ALJ found other severe impairments, which caused further analysis under subsequent steps in the five-step adjudicative process.[56] Thus, the ALJ's failure to find severe mental health impairments at step two is of no moment here.

Nevertheless, the ALJ must consider even non-severe impairments when formulating the RFC.[57] Here, the ALJ did. Aside from the ALJ's discussion in his analysis of step two, the ALJ engaged in additional analysis in step four as to why he found the opinions of Plaintiff's mental

---

[52] *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citation modified).

[53] *Id.* (emphasis in original).

[54] *Id.*

[55] AR 34.

[56] *Id.*

[57] 20 C.F.R. §§ 404.1545(a)(2), (e), 416.945(a)(2), (e); *Allman*, 813 F.3d at 1330 (stating that the "ALJ must consider the limiting effects of non-severe impairments in determining the claimant's RFC").

health providers were not persuasive.[58] Specifically, the ALJ noted that the mental health opinions by Plaintiff's providers were only partially persuasive because their opinions "are not supported by current examinations of the claimant or reviews of the current medical record."[59] In fact, the ALJ stated that their opinions were "from a previously adjudicated period of disability" that was dated "almost four and a half years prior to the alleged onset date and [were] remote in time."[60]

Additionally, the court cannot ignore the fact that the mental health examiners reached differing conclusions about the extent of Plaintiff's mental health impairments. One examiner found Plaintiff's mental disorders "Non Severe"[61] while another found them "Severe."[62] The ALJ also observed that Plaintiff's depression was well controlled with medication and that no provider recommended that she "seek treatment by a psychiatrist, a psychologist, or a mental health counselor or therapist."[63] The ALJ pointed to medical records showing that Plaintiff was alert and maintained appropriate eye contact, speech, mood, and affect during her medical examinations along with normal levels of judgment, memory, and concentration.[64] Plaintiff denied having panic attacks, "hallucinations, delusions, paranoid ideation, odd or unusual beliefs,

---

[58] AR 47.

[59] *Id*.

[60] *Id*.

[61] AR 86.

[62] AR 94, 107.

[63] AR 35.

[64] AR 35-36.

and other psychotic processes."[65] The ALJ further noted that Plaintiff's test scores suggested a "Mild Cognitive Impairment" and that "her level of intelligence [was] within the average range."[66] The ALJ also noted that Kent H. Gregory, Psy.D., diagnosed Plaintiff with major depressive disorder and anxiety disorder but that the "largely unremarkable findings from the psychological consultative examination do not support allegations of a severe mental health impairment."[67] All of this shows that the ALJ thoroughly examined the record and assessed the conflicting evidence regarding Plaintiff's mental health impairments. How the ALJ weighed this evidence is something with which Plaintiff disagrees, but it is not something this court will redo. Thus, even if the ALJ should have found Plaintiff's mental health impairments "severe" at step two, the ALJ's thorough decision not to include any limitations in the RFC at step four is supported by substantial evidence.

## ORDER

For the reasons stated above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 10th day of December 2025.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[65] AR 35.
[66] *Id.*
[67] AR 36.